HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

**TANYA SHANAHAN,** individually and on
behalf of all others similarly situated,

                    Plaintiff,

          v.

**7-ELEVEN, INC.,** a Foreign Profit
Corporation, and **DOES 1-10**, inclusive,

                    Defendant.

Case No.: 3:22-cv-05484-BHS-JRC

**PLAINTIFF'S <u>UNOPPOSED</u> MOTION
FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT**

NOTING DATE: March 2, 2023

Without Oral Argument

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 3:22-cv-05484-BHS-JRC
- 1 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR STREET, STE. 205
TACOMA, WASHINGTON  98406
TEL: (253) 625-7720 / FAX: (310) 277-0635

# TABLE OF CONTENTS

I.    INTRODUCTION..................................................................................................5

II.   FACTUAL BACKGROUND ...............................................................................6

III.  PROCEDURAL BACKGROUND ........................................................................6

IV.   THE PROPOSED SETTLEMENT TERMS .........................................................7

V.    ARGUMENT .......................................................................................................9

A.    The Court Should Preliminarily Approve This Settlement Under FRCP 23(e)....9

B.    The Class Satisfies the Requirements of FRCP 23 for Conditional Certification.10
  1.   FRCP 23(a) Requirements for Class Certification Have Been Met.....................10
  2.   FRCP 23(b)(3) Requirements for Class Certification Have Been Met. ...............11

C.    The Settlement is Fair, Reasonable, and Adequate. ................................................12
  1.   The Settlement Amount is a Fair Compromise in Light of Risks and Uncertainties. ...........13
  2.   The Parties Sufficiently Investigated and Litigated this Matter to Allow Counsel and this Court to Conclude that the Settlement is Fair, Adequate, and Reasonable. ......................................18
  3.   The Settlement was the Product of Informed, Non-Collusive, and Arm's-Length Negotiations Between Experienced Counsel Whom Jointly Support the Settlement...........................................19
  4.   The Proposed Notice Plan is Reasonable. .................................................................19

VI.   THE REQUESTED ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE PAYMENT ARE FAIR AND REASONABLE. ...................20

A.    The Class Representative Payment is Reasonable....................................................21

VII.  THE COURT SHOULD APPOINT CPT GROUP, INC. AS SETTLEMENT ADMINISTRATOR.............................................................................................22

VIII. THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING. ..............22

IX.   CONCLUSION ...................................................................................................22

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 3:22-cv-05484-BHS-JRC
- 2 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR STREET, STE. 205
TACOMA, WASHINGTON 98406
TEL: (253) 625-7720 / FAX: (310) 277-0635

# TABLE OF AUTHORITIES

## CASES

Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997) .......................................................... 7

Berry v. Transdev Servs., Inc., 2019 WL 117997, at *6 (W.D. Wash. Jan. 7, 2019) ................ 10

Brady v. Autozone Stores, Inc., 188 Wn.2d 576 (Wash. 2017) ............................................. 9, 11

Carlson v. Home Depot USA, Inc., 2021 U.S. Dist. LEXIS 194352 (W.D. Wash. Oct. 7, 2021) 8

Chavez v. Our Lady of Lourdes Hosp. at Pasco, 190 Wn.2d 507 (Wash. 2018) ........................ 8

Churchill Village, L.L.C. v. Gen. Elec., 361 F.3d 566, 575-76 (9th Cir. 2004) ......................... 9

Dennings v. Clearwire Corp., No. C10-1859JLR, 2013 U.S. Dist. LEXIS 64021 (W.D. Wash. May 3, 2013) ................................................................................................................ 16

Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 174-75 (1974) .................................................... 15

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1027 (9th Cir. 1998) ........................................ 5, 6, 7

Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994) ................................................................. 17

Hill v. Garda CL Nw., Inc., 191 Wn.2d 554, 561 (2018) .......................................................... 12

Hughes v. Microsoft Corp., No. C98-1646C, 2001 U.S. Dist. LEXIS 5976, at *20 (W.D. Wash. Mar. 26, 2001) .......................................................................................................... 15

In re Beef Indus. Antitrust Litig., 607 F.2d 167, 179-80 (5th Cir. 1979) ................................... 9

In re Bluetooth Headset Prods. Liab., 654 F.3d 935, 942 (9th Cir. 2011) ............................... 16

In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) ...................................... 13

In re Omnivision Tech., Inc., 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) ........................... 12

In re Syncor ERISA Litig., 516 F.3d 1095, 1101 (9th Cir. 2008) ............................................... 9

Lewis v. Starbucks Corp., No. 2:07-cv-00490-MCE-DAD, 2008 U.S. Dist. LEXIS 83192, at *17 (E.D. Cal. Sept. 11, 2008) ........................................................................................ 14

Manigo v. Time Warner Cable, Inc., 2017 WL 5149225, at *4 (C.D. Cal. 2017) .................... 11

Martin v. FedEx Ground Package System, Inc., 2008 WL 5478576, at *8 (N.D. Cal. Dec. 31, 2008) ............................................................................................................................ 16

McConnell v. Mothers Work, Inc., 131 Wn. App. 525, 529-30 (2006) ...................................... 8

Mercury Interactive Corp., 618 F.3d 988, 992 (9th Cir. 2010) ................................................ 16

Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) ................................. 15

Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982) ........................ 8

Pellino v. Brink's, Inc., 164 Wn. App. 668, 690 (Wash. Ct. App. 2011) ................................... 9

Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 811-12 (1985) ............................................... 15

Rannis v. Recchia, 380 F. App'x 646, 651 (9th Cir. 2010) ......................................................... 6

Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009) ........................................... 12

Romero v. Producers Dairy Foods, Inc., No. 1:05cv0484 DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) ................................................................................................. 17

Schilling v. Radio Holdings, Inc., 136 Wn.2d 152, 160, 961 P.2d 371, 372 (1998) ................ 12

Selk v. Pioneers Mem'l Healthcare Dist., 159 F. Supp. 3d 1164, 1175 (S.D. Cal. 2016) ......... 13

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR STREET, STE. 205
TACOMA, WASHINGTON  98406
TEL: (253) 625-7720 / FAX: (310) 277-0635

*Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994)..................................................... 15

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011)....................................... 10

*Wilson v. Kiewit Pacific Co.*, No. 09-cv-03630, ECF No. 119 (N.D. Cal. 2012)................ 17

*Wren v. RGIS Inventory Specialists*, No. C–06–05778 JCS, 2011 U.S. Dist. LEXIS 38667, at *20 (N.D. Cal. April 1, 2011) ....................................................................................... 9

## STATUTES

RCW 49.12.150 ..................................................................................................................... 16

RCW 49.46.090(1).................................................................................................................. 16

RCW 49.52.070 ............................................................................................................... 12, 16

WAC 296-126-092(1).............................................................................................................. 9

## RULES

Fed. R. Civ. P. 23(e) ............................................................................................................... 8

FRCP 23(a) ............................................................................................................................. 6

FRCP 23(h) ............................................................................................................................. 16

Rule 23(b) ........................................................................................................................... 6, 8

## TREATISES

Manual for Complex Litigation (4th ed. 2004), § 21.61 ........................................................ 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 3:22-cv-05484-BHS-JRC
- 4 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR STREET, STE. 205
TACOMA, WASHINGTON  98406
TEL: (253) 625-7720 / FAX: (310) 277-0635

## I.   __INTRODUCTION__

Plaintiff Tanya Shanahan ("Plaintiff") seeks preliminary approval of a $1,150,000 non-reversionary class action settlement of alleged wage and hour claims against Defendant 7-Eleven, Inc. ("Defendant" or "7-Eleven"). This class action was brought on behalf of approximately 3,828 individuals who worked for Defendant and/or at a corporate owned 7-Eleven location in Washington State as a convenience store employee in a non-managerial and/or non-exempt position at any time from June 3, 2019 through December 31, 2022 (the "Settlement Period" or "Class Period") (hereinafter the "Class or "Class Members"). Plaintiff alleges that Defendant failed to compensate for missed meal periods in violation of WAC 296-126-092 and willfully and intentionally withheld wages pursuant to RCW 49.52.050, .070. Defendant contended, among other defenses, that its meal period policies were facially valid and that individualized issues would predominate precluding certification on the meal period claims, including as to whether meal periods were voluntarily waived, and as to why breaks were either late or missed. These defenses presented substantial risks of no recovery for Plaintiff and the putative class.

After the exchange of informal discovery and class data, through contested but productive settlement discussions between counsel for Plaintiff and Defendant (the "Parties") that took place through informed, arms'-length, and non-collusive negotiations, including several days of direct settlement negotiations aided by a highly-respected mediator, Nancy Maisano, the Parties agreed to settle this action for approximately 60% of the maximum meal break wages allegedly owed to the Class Members during the Settlement Period, excluding double damages and interest. The Settlement Agreement ("S.A.") is attached as **Exhibit 1** to the Declaration of Craig J. Ackermann ("CJA Decl."), filed herewith. The proposed Settlement Agreement satisfies all the criteria for preliminary settlement approval under Fed. R. Civ. P. ("FRCP") 23 and is fair, adequate, and reasonable. Defendant does not oppose Plaintiff's instant motion. Accordingly, Plaintiff requests that the Court: grant preliminary approval of the proposed Settlement; conditionally certify the Class; appoint Plaintiff and Plaintiff's Counsel as Class Representative and Class Counsel, respectively; approve the proposed notice plan; and approve deductions from the Total Settlement Amount ("TSA") pursuant to the Settlement.

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 3:22-cv-05484-BHS-JRC
- 5 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR STREET, STE. 205
TACOMA, WASHINGTON  98406
TEL: (253) 625-7720 / FAX: (310) 277-0635

## II.    FACTUAL BACKGROUND

During the Settlement Period, approximately 3,828 individuals were employed on an hourly compensation basis at a 7-Eleven location. *Id.* ¶ 14.c. From June 3, 2019 through December 31, 2022 (the "Settlement Period" or "Class Period"), the Class Members were compensated on the same hourly compensation basis. *Id.* ¶ 14.b. Based on Plaintiff's counsel's review of Defendant's records, between June 3, 2019 and July 31, 2022, the Class Members worked a total of 211,152 shifts of 5+ hours and 3,193 shifts of 11+ hours, the Class Members' aggregate average shift length was 7.3 hours, the Class Members worked a total of 240,776 shifts, and 46,644 of those shifts were "solo-shifts" where a class member worked alone at one of Defendant's Washington State convenience stores for a 5-hour period or greater during the Class Period.. *Id.* ¶ 14.d.

## III.    PROCEDURAL BACKGROUND

On June 3, 2022, Plaintiff filed her class action Complaint in the Clark County Superior Court alleging causes of action for Defendant's: (1) failure to compensate for missed meal periods in violation of WAC 296-126-092; and (2) double damages for Defendant's willful and intentional withholding of wages pursuant to RCW 49.52.050, 070. CJA Decl., ¶ 15. On July 1, 2022, Defendant filed its Notice of Removal of the action from the Clark County Superior Court to the United States District Court for the Western District of Washington. (Dkt. No. 1). On October 17, 2022, the Parties jointly filed a stipulated motion to stay the case to permit the Parties to exchange informal discovery and attend private mediation with Nancy Maisano (Dkt. No. 26).

In anticipation of mediation, Plaintiff sent a request for informal discovery and class data to Defendant's counsel, and in November 2022, Defendant's counsel provided Plaintiff's counsel with a set of responsive documents including, *inter alia*, the "Class List" excel spreadsheet which included the list of Class Members and their start dates in hourly roles, end dates in hourly roles, and total number of days in hourly roles; the "Class Punches" excel spreadsheet which lists the convenience store worked at by each Class Member, along with the Class Members' date and clock-in time, date and clock-out time, and total minutes worked per shift; and extensive time and

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 3:22-cv-05484-BHS-JRC
- 6 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR STREET, STE. 205
TACOMA, WASHINGTON  98406
TEL: (253) 625-7720 / FAX: (310) 277-0635

meal records for the Class Members.[1] CJA Decl., ¶ 16.

In December 2022, the Parties engaged in several days of direct settlement negotiations aided by a highly-respected mediator, Nancy Maisano. *Id.* At all times during the settlement discussions, the Class Members were represented by Plaintiff's counsel and Defendant was represented by its counsel. *Id.* After intensive, arms'-length negotiations that took place over several days in December 2022, the Parties agreed to the terms of the long-form Settlement Agreement before this Court for preliminary settlement approval. *Id.* ¶ 17, **Exhibit 1**.

## IV.     THE PROPOSED SETTLEMENT TERMS

Total Settlement Amount – Defendant will pay the non-reversionary Total Settlement Amount ("TSA") of $1,150,000, which is inclusive of all of the following payments set forth in the Settlement Agreement: Plaintiff's Class Representative Payment ($10,000), Class Counsel's attorneys' fees of 30% of the TSA (i.e., $345,000) and up to $20,000 in actual litigation costs incurred, and the Settlement Administrator's Costs ($26,750). S.A., ¶¶ 1.17, 7.2-7.4.[2] The Net Settlement Amount ("NSA") of approximately $748,250.00 is the amount remaining after all of the foregoing deductions, and it will be paid out to the Settlement Class Members without the need for Settlement Class Members to submit a claim form to receive their pro-rata share. Each Settlement Class Member's share shall be calculated by first dividing his or her number of shifts actually worked during the Settlement Period by the Total Settlement Class Member Shifts. This calculation will result in a percentage figure for each Settlement Class Member (the "Percentage Figure"). The Percentage Figure will then be used to determine each Settlement Class Member's portion of the Net Settlement Amount by multiplying the Percentage Figure by the Net Settlement Amount. *Id.* ¶ 7.5.2.

Class Definition – The "Class Members" are "all individuals who worked for Defendant and/or at a corporate owned 7-Eleven location in Washington State as a convenience store employee in a non-managerial and/or non-exempt position at any time from June 3, 2019 through December

---

[1]. Plaintiff's counsel hired a third-party data analytics company to analyze the records and data and provided a detailed report regarding meal period violation rates and Defendant's potential exposure.

[2] Defendant shall also pay any employer-side payroll taxes owing on the portion of the Total Settlement Amount allocated towards wages on top of and in addition to the Total Settlement Amount. S.A., ¶ 1.17.

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 3:22-cv-05484-BHS-JRC
- 7 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR STREET, STE. 205
TACOMA, WASHINGTON  98406
TEL: (253) 625-7720 / FAX: (310) 277-0635

31, 2022." *Id.* ¶ 1.7.

Checks Cashed Process – Class Members will not be required to file a claim to receive their share of the NSA. If any Class Members do not cash or deposit their checks within the 180-day Check Cashing Period, any amounts associated with those uncashed checks will be sent by the Settlement Administrator to the State of Washington with the associated name of the Class Member pursuant to Washington's Unclaimed Property Act. *Id.* ¶¶ 6.2, 7.5, 7.8. If any Class Members opt-out of the Settlement, they shall not receive any Individual Settlement Payment and shall not be bound by the release that the Settlement Agreement entails. *Id.* ¶ 6.2.2. Class Members will have the opportunity to correct any errors on his or her Class Notice concerning the number of shifts worked during the Settlement Period that was used to calculate their Individual Settlement Payment. *Id.* ¶ 6.1.

Class Counsel Award (i.e., Attorneys' Fees and Costs) – Class Counsel requests, and Defendant does not oppose, that the Court preliminarily approve their attorneys' fees in the amount of 30% of the TSA ($345,000) and litigation cost reimbursement (of up to $20,000.) *Id.* ¶¶ 1.6, 7.3.

Class Representative Service Award – Plaintiff requests the Court preliminarily approve a Class Representative Service Award of $10,000, which Defendant does not oppose. *Id.* ¶ 7.4.

Settlement Administration Costs – The Parties have selected CPT Group, Inc. ("CPT Group") to serve as the Settlement Administrator. CPT Group has administered thousands of wage and hour settlements, (see https://www.cptgroup.com/about-us/) and pursuant to the parties Settlement Agreement, CPT Group has provided a quote of $26,750 to administer this Settlement. S.A., ¶ 7.2.

Class Notice – The proposed Class Notice fully informs the Class Members of the nature of the lawsuit and each Class Member's rights under the terms of the Settlement Agreement and applicable law, and includes, without limitation: (1) a detailed explanation of the case, including the basic contentions and denials of the parties; (2) a statement that the court will exclude the member from the Class if the member so requests by a specified date; (3) a procedure for the member to follow in requesting exclusion from the Class; (4) a statement that the judgment, whether favorable or not, will bind all members who do not request exclusion; and (5) a section that defines

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 3:22-cv-05484-BHS-JRC
- 8 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR STREET, STE. 205
TACOMA, WASHINGTON 98406
TEL: (253) 625-7720 / FAX: (310) 277-0635

the Settlement Period, lists the shifts worked during that period according to Defendant's records, calculates an estimated share of the Settlement for the member, and explains that Class Members do not need to take any action to receive their share of the Settlement. *See* S.A., **Exhibit 1**.

<u>Tax Consequences of Settlement Payments</u> – One-half (50%) of every Individual Settlement Payment will represent wages allegedly due and will be subject to required legal deductions and reported on a Form W-2. The other one-half (50%) of every Individual Settlement Payment will represent alleged penalties and interest and will be reflected on a Form 1099. *Id.* ¶ 7.7.

<u>Scope of Release and Final Judgment</u> – The release contemplated by the proposed Settlement corresponds to the operative Complaint, releasing all claims that were or could have been asserted based on the allegations of the Complaint against Defendant and the Released Parties during the Settlement Period. *Id.* ¶ 8.1. Plaintiff will enter a general release in exchange for her Class Representative Service Award. *Id.* ¶ 8.2. Upon final approval of the Settlement, Class Counsel will submit a proposed final judgment. *Id.* ¶¶ 9.2, 9.5.

**V.    ARGUMENT**

**A.  The Court Should Preliminarily Approve This Settlement Under FRCP 23(e).**

A certified class action (or a class proposed to be certified for purposes of settlement) may not be dismissed, compromised or settled without approval of the Court.  *See* FRCP 23(e). Proper review and approval of a class action settlement requires three steps: (1) preliminary approval of the proposed settlement after submission of a written motion; (2) dissemination of mailed and/or published notice of the settlement to all class members; and (3) a formal fairness hearing, or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented. *Manual for Complex Litigation* (4th ed. 2004), § 21.61. The decision to approve or reject a proposed settlement is committed to the sound discretion of the court and may be reversed only upon a strong showing of clear abuse of discretion. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

FRCP 23 requires that all class action settlements satisfy two primary prerequisites before a court may grant certification for purposes of preliminary approval: (1) that the settlement class

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 3:22-cv-05484-BHS-JRC
- 9 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR STREET, STE. 205
TACOMA, WASHINGTON  98406
TEL: (253) 625-7720 / FAX: (310) 277-0635

1    meets the requirements for class certification if it has not yet been certified (FRCP 23(a) and (b);

2    *Hanlon*, 150 F.3d at 1020); and (2) that the settlement is fair, reasonable, and adequate (FRCP

3    23(e)(2)). Here, both requirements for preliminary approval are satisfied.

4    **B.   The Class Satisfies the Requirements of FRCP 23 for Conditional Certification.**

5    FRCP 23(a) sets out prerequisites for class certification: (1) numerosity, (2) commonality,

6    (3) typicality, and (4) adequacy of representation. FRCP 23(a)(1)-(4). Furthermore, Rule 23(b)(3)

7    provides that a class action seeking monetary relief may only be maintained if "the court finds that

8    the questions of law or fact common to class members predominate over any questions affecting

9    only individual members, and that a class action is superior to other available methods for fairly

10   and efficiently adjudicating the controversy." FRCP 23(b)(3). These requirements are met here.

11   **1.   FRCP 23(a) Requirements for Class Certification Have Been Met.**

12   **i.   The Class is Sufficiently Numerous.**

13   Numerosity demands that the class be large enough that joinder of all members be

14   impracticable. FRCP 23(a)(1). Courts have routinely found numerosity satisfied with classes of at

15   least forty (40) members. *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010). Here,

16   numerosity is met because Defendant has indicated that there are approximately 3,828 members of

17   the Class. CJA Decl., ¶ 14.c.

18   **ii.   The Commonality Requirement is Satisfied.**

19   Commonality for class certification concerns the existence of questions of law and/or fact

20   common to the class and is "construed permissively." *Hanlon*, 150 F.3d at 1019. The common

21   questions here relate to Defendant's uniform policies and/or practices relating to meal periods,

22   including but not limited to whether Defendant had compliant meal period policies, whether the

23   putative Class Members were able to take duty-free meal periods that complied with Washington

24   law, and whether Defendant lacked a policy to record and pay employees for missed meal periods.

25   *Id.* ¶ 18.

26   **iii.   Plaintiff's Claims Are Typical of Those of the Putative Class.**

27   Typicality is met if the named Plaintiff's claims "are reasonably co-extensive with those of

28   absent class member; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here,

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 3:22-cv-05484-BHS-JRC
- 10 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR STREET, STE. 205
TACOMA, WASHINGTON 98406
TEL: (253) 625-7720 / FAX: (310) 277-0635

typicality is satisfied because Plaintiff's alleged claims are typical of those claims held by Class Members: the named Plaintiff was employed at one of Defendant's 7-Eleven locations, on an hourly compensation basis, during the Settlement Period, she was subject to the same meal period and compensation policies and procedures as the rest of the Class, she alleges that she incurred unpaid meal period wages, and she seeks the same type of relief. *See* Declaration of Tanya Shanahan ("Shanahan Decl."), ¶¶ 2-3.

### iv.    Plaintiff and Class Counsel Will Fairly and Adequately Represent the Class.

Adequacy permits class certification only if the "representative parties will fairly and adequately protect the interests of the class." FRCP 23(a)(4). This means that proposed class representatives and their counsel cannot have conflicts of interest with the class and must vigorously prosecute the action on behalf of the class. *Hanlon*, 150 F.3d at 1020. Neither Plaintiff nor her counsel have a conflict with any putative Class Member. CJA Decl., ¶ 3; Shanahan Decl., ¶ 4. In addition, Plaintiff's counsel has performed substantial work and diligently investigated and prosecuted this case to a successful conclusion. CJA Decl., ¶ 13. Plaintiff's counsel has significant experience litigating wage and hour class actions and have been certified by numerous state and federal courts as competent, adequate class counsel. *Id.* ¶¶ 4-12.

### 2.    FRCP 23(b)(3) Requirements for Class Certification Have Been Met.

Under Rule 23(b)(3), plaintiffs must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." The common questions raised in this action predominate over any individualized questions concerning the Class. Predominance tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). In other words, courts must determine whether the focus of the proposed class action will be on the actions and conduct of the defendants rather than the behavior of individual class members. *Hanlon*, 150 F.3d at 1022-23. Here, the common questions of whether there were compliant meal period policies, whether the putative Class Members were able to take duty-free meal periods that complied with

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 3:22-cv-05484-BHS-JRC
- 11 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR STREET, STE. 205
TACOMA, WASHINGTON  98406
TEL: (253) 625-7720 / FAX: (310) 277-0635

Washington law, and whether Defendant lacked a policy to record and pay for missed meal periods, predominate over any potential individualized issues. CJA Decl., ¶ 18. Further, this class action would be a superior method of adjudication compared to a multitude of individual suits. To determine if the class approach is superior, courts consider: (1) the interest of class members in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability of concentrating the litigation in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. FRCP 23(b)(3)(A)-(D). Here, a class action device is preferable because the Class Members do not have a strong interest in controlling their individual claims, as the individual prosecution of the claims would be identical to and duplicative of the class action litigation. The use of the class action mechanism here would also efficiently resolve numerous identical claims at the same time while avoiding the waste of judicial resources and eliminating the possibility of conflicting decisions from repetitious litigation. Because there are no manageability issues presented by this proposed resolution of the Class's identical claims under Washington state law, a class action is the superior method for adjudicating the claims in this action.[3]

### C.  The Settlement is Fair, Reasonable, and Adequate.

In deciding whether to approve a proposed class action settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). In exercising their sound discretion to approve settlements, courts regularly consider whether the settlement is fair, non-collusive, and "reflects all the normal perils of litigation as well as the additional uncertainties inherent in complex class actions." *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 179-80 (5th

---

[3] Courts have certified similar unpaid break claims in Washington State. *See e.g.*, *Hernandez et al., v. Great Western Pacific, Inc.*, King County Superior Court Case No. 18-2-08788-1 SEA, Order Granting In Part Plaintiffs' Motion for Class Certification (Sept. 19, 2019) (certifying unpaid meal and rest break claims as to class members who did not sign arbitration agreements); *Chavez v. Our Lady of Lourdes Hosp. at Pasco*, 190 Wn.2d 507 (Wash. 2018) (certifying a class of hourly-paid nurse's claims for unpaid rest breaks and meal periods); *McConnell v. Mothers Work, Inc.*, 131 Wn. App. 525, 529-30 (2006) (noting the trial court certified the plaintiff sales associate's class claims for withheld rest breaks and meal breaks on behalf of classes of sales associates and store managers); *Carlson v. Home Depot USA, Inc.*, 2021 U.S. Dist. LEXIS 194352 (W.D. Wash. Oct. 7, 2021) (certifying unpaid meal break and rest break claims on behalf of hourly-paid Home Depot supervisors and specialists).

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 3:22-cv-05484-BHS-JRC
- 12 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR STREET, STE. 205
TACOMA, WASHINGTON 98406
TEL: (253) 625-7720 / FAX: (310) 277-0635

Cir. 1979). Included in this analysis are considerations of "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026). Importantly, there is a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C–06–05778 JCS, 2011 U.S. Dist. LEXIS 38667, at *20 (N.D. Cal. April 1, 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). Applying these factors to this case, the proposed Settlement is fair, reasonable, and adequate.

1. **The Settlement Amount is a Fair Compromise in Light of Risks and Uncertainties.**

   a. **Plaintiff's Claims**

   Plaintiff alleges that Class Members were not compensated for missed meal periods. CJA Decl., ¶¶ 15, 18. Plaintiff's meal period claims[4] allege that she and the Class Members were typically scheduled to work busy shifts during which there was no opportunity to take timely and/or regular meal periods, and that their workplaces were regularly understaffed, so Class Members did not have the necessary coverage that would allow them to regularly take statutory meal periods. *Id.* ¶ 18. *Id. See also Pellino*, 164 Wn. App. at 690 (concluding that Washington law requires employers to compensate employees for missed meal periods); *Chavez v. Our Lady of Lourdes Hosp. at Pasco*, 415 P.3d 224, 230-31 (Wash. 2018) (holding that Washington law requires employers to

---

[4] Pursuant to WAC 296-126-092(1), "[e]mployees shall be allowed a meal period of at least thirty minutes which commences no less than two hours nor more than five hours from the beginning of the shift. Meal periods shall be on the employer's time when the employee is required by the employer to remain on duty on the premises or at a prescribed work site in the interest of the employer." WAC 296-126-092(2) states that "No employee shall be required to work more than five consecutive hours without a meal period." *See* Washington Dep't of Lab. and Industries, *Admin. Policy ES.C.6.1, Meal and Rest Periods for Nonagricultural Workers Age 18 and Over*, at p. 4 (Dec. 1, 2017). A plaintiff can establish a prima facie case for missed meal and/or rest periods by providing evidence that he did not receive a timely meal and/or rest period, and the burden then shifts to the employer to rebut this by showing no violation. *Brady v. Autozone Stores, Inc.*, 188 Wn.2d 576 (Wash. 2017) (citing *Pellino v. Brink's, Inc.*, 164 Wn. App. 668, 690 (Wash. Ct. App. 2011); WAC 296-126-092).

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 3:22-cv-05484-BHS-JRC
- 13 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR STREET, STE. 205
TACOMA, WASHINGTON 98406
TEL: (253) 625-7720 / FAX: (310) 277-0635

compensate employees for missed breaks, and noting that "the dominant and overriding issue common to all putative class members is whether [defendant] failed to ensure [class members] could take breaks and record missed breaks.").

### b. **Defendant's Defenses**

Defendant denied the allegations in the Complaint, and maintained that it could not be held liable for the claims alleged by Plaintiff for several reasons. Most significantly, Defendant opposed class certification, and Plaintiff's counsel had to consider the risk that this Court would not certify a Class, leaving only Plaintiff's individual claims for adjudication and allowing no recovery for the rest of the Class. CJA Decl., ¶ 21. Defendant argued vigorously that the meal break policies and practices applicable to Class Members differed between stores, and that these differences would preclude class certification. *Id.* Defendant argued that Plaintiff alleges no evidence of any company-wide course of conduct affecting the entire class with respect to her meal breaks, and that no such company-wide behavior exists. *Id.* Moreover, Defendants argued that the very nature of Plaintiff's meal break claims turns on the unique work circumstances of each individual hourly employee, and whether or not the nature of their work allowed them sufficient time to take meal breaks, since the nature of the work is vastly different from store to store. *Id.*[5] Defendant contended that the differing conditions at each store, including working under different managers and supervisors, will inevitably require a location-by-location, if not an individual-by-individual, analysis as to whether each position and whether each person had ample opportunity to take meal breaks, including whether individuals waived meal periods. *Id.*[6] While Plaintiff feels that the putative Class, or certain subclasses, would likely be certified if this matter had not been resolved, there are certainly risks associated with non-certification of the putative Class claims. *Id.* In considering these risks and others, the Parties agreed that Settlement was appropriate, and that the Settlement here is fair and

---

[5] *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (denying class certification, and holding that Rule 23 requires more than mere allegations that the proposed class "all suffered a violation of the same provision of law," but instead, "[t]heir claims must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

[6] *See Berry v. Transdev Servs., Inc.*, 2019 WL 117997, at *6 (W.D. Wash. Jan. 7, 2019) (denying plaintiff's motion for class certification of meal and rest periods, and finding that "[a]necdotal evidence regarding missed or incomplete meal breaks is not sufficient to establish the existence of a common practice" in support of certification).

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 3:22-cv-05484-BHS-JRC
- 14 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR STREET, STE. 205
TACOMA, WASHINGTON 98406
TEL: (253) 625-7720 / FAX: (310) 277-0635

reasonable.

Defendants also argued that it has maintained a compliant meal break policy, contemplated in handbooks (and related addenda), manager trainings, workplace posters, awareness forms, and other types of acknowledgments. CJA Decl., ¶ 22. Defendant further argued that employees have always been advised to report any missed breaks to 7-Eleven human resources, and human resources has never fielded any complaints about missed meal breaks in Washington. *Id.* Defendant also contended that it is well settled under Washington law that employees may waive meal breaks, and that if the case proceeded, it was confident that many hourly paid employees would testify that they knowingly and voluntarily waived their meal breaks. To this end, Defendant produced written meal period waivers signed by several Class Members. Defendant also produced samples of break acknowledgment documents signed by Class Members, where employees acknowledged their understanding of their right to take meal breaks consistent with Washington law. *Id.*[7] Defendants also argued that Plaintiff's assertion that violations occurred because he worked in a fast-paced or busy environment cannot support class certification. *See e.g.*, *Manigo v. Time Warner Cable, Inc.*, 2017 WL 5149225, at *4 (C.D. Cal. 2017) (class certification denied; "understaffing is not an unlawful practice;" "even assuming Plaintiffs could show that all putative class members worked in a dispatch center that was understaffed ... these circumstances do not establish that the class was uniformly denied the opportunity to take timely meal and rest breaks.").[8] Throughout negotiations,

---

[7] Defendant produced written meal period waivers signed by Class Members, and asserted that it has also permitted employees to verbally waive their right to a meal period throughout the Settlement Period, which they argued is lawful in Washington State. CJA Decl., ¶ 21. Defendant argued the Washington Supreme Court in *Brady* relied favorably on the Department of Labor & Industries' Administrative Policy regarding Meal and Rest Periods for Nonagricultural Workers Age 18 and Over, which stated -- and continues to state today -- that: "If an employee wishes to waive that meal period, the employer may agree to it...*While it is not required, the department recommends obtaining a written request from the employee(s) who chooses to waive the meal period.*" (emphasis added). See https://lni.wa.gov/workers-rights/_docs/esc6.1.pdf. Defendant also produced samples of break acknowledgment documents signed by Class Members, where employees acknowledged their understanding of their right to take meal and rest periods consistent with Washington law. CJA Decl., ¶ 21.

[8] Among other arguments, Defendant argued that under *Brady*, time records do not establish a class-wide basis for liability because they do not support a finding that an employee did not receive a compliant meal break, and that, as noted in the subsequent order affirming the denial of class certification in *Brady* following remand from the Washington Supreme Court, the district court stressed *Brady* still "did not describe what it means to 'receive' a timely meal break, or what evidence would show that an employee did not receive such a break." *Brady v. Autozone Stores, Inc.*, 2018 WL 3526724, at *4 (W.D. Wash. July 23, 2018) (denying class certification because Brady "still has not met his burden to show that common issues of law or fact predominate to make class action the superior vehicle"). Defendant contended that, for these reasons, "time-card data alone to indicate that a particular employee did not 'receive' a timely meal break

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 3:22-cv-05484-BHS-JRC
- 15 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR STREET, STE. 205
TACOMA, WASHINGTON  98406
TEL: (253) 625-7720 / FAX: (310) 277-0635

Defendant asserted that Class Members received meal breaks in accordance with the law. CJA Decl., ¶ 22. Plaintiff's counsel had to take all of these meal period defenses and risks into account in the settlement negotiations here.

Finally, Defendant asserted that Plaintiff would have difficulty proving Defendant willfully withheld wages, and thereby would not be entitled to double damages pursuant to RCW 49.52.070. CJA Decl., ¶ 23. Wage violations are not subject to double damages if they result from "carelessness or error," or if there was "a 'bona fide' dispute about whether all or part of the wages were really due." *Hill v. Garda CL Nw., Inc.*, 191 Wn.2d 554, 561 (2018). When there is a bona fide dispute over whether an employer owes wages, the employer's failure to pay owed wages is not willful. *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 160 (1998). Defendant contend that its failure to pay owed wages was not willful, and that it was difficult to see how any meal break violations could have arisen from anything other than inadvertence or carelessness on the part of Defendant's managers. CJA Decl., ¶ 23.

In considering these risks and others, this Settlement is an excellent result for the Class Members. The Parties agree the Settlement here is fair and reasonable.

### c. __The TSA Represents a Substantial Recovery Considering the Risks and Defendants' Defenses.__

Plaintiff estimates that the $1,150,000 TSA represents approximately 60% of maximum meal break wages allegedly owed to the Class Members during the Settlement Period, excluding double damages and interest. *Id*. ¶¶ 26, 29 This is a substantial recovery considering the serious risks in this case and Defendant's numerous legal and factual defenses, especially considering the risks related to class certification. The results obtained here are well within the range of, or better than, wage and hour class settlements that have been found fair and reasonable by other courts. *See In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement amounting to 9% of estimated total damages); *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 965 (9th Cir. 2009) (approving settlement amounting to 30% of the damages estimated by the class

---

simply because of a 5+ hour time punch on their [time] record...is simply not a reliable indicator of whether a meal break violation occurred, or of which individuals belong in the class." *Brady*¸2018 WL 3526724, at *4.

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 3:22-cv-05484-BHS-JRC
- 16 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR STREET, STE. 205
TACOMA, WASHINGTON  98406
TEL: (253) 625-7720 / FAX: (310) 277-0635

expert); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (approving settlement estimated to be worth between 1/6 and 1/2 of the plaintiffs' estimated loss); *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1175 (S.D. Cal. 2016) (recognizing that wage and hour settlement was fair and reasonable where "total settlement fund" represented between 26% to 50% of the best possible recovery"); *Winkel v. JH Steak, LLC*, King County Super. Ct. No. 20-2-04853-4 SEA (Oct. 15, 2021) (Hon. Sean P. O'Donnell) (granting final approval to a class action settlement resolving, inter alia, unpaid meal and rest break claims where the settlement amount represented approximately 24% of the maximum estimated damages); *Millican v. Seattle Tennis Club et al.*, King County Super. Ct. No. 20-2-05117-9 SEA (May 14, 2021) (Hon. Michael R. Scott) (granting final approval to a class action settlement resolving unpaid wage claims where the settlement amount represented approximately 31% of the estimated damages). CJA Decl., ¶ 27. In light of these comparable settlements, the Settlement in the present case is within the zone of reasonableness and worthy of preliminary approval.

Moreover, the amount recovered per Class Member here, with an estimated average Individual Settlement Payment of $195.47 per Class Member (i.e., $748,250.00 Net Settlement Amount divided by 3,828 Class Members), is a comparable average individual class member recovery to other wage-and-hour settlements that have been granted final approval in Washington. For example, in *Birnbaum & Delapina v. Junk Consulting Services, LLC*, the court granted final approval in a wage-and-hour class action settlement where the average recovery per class member was $194.63. *See* Order and Judgment Granting Final Approval of Class Action Settlement and Attorney's Fees and Costs, Case No. 20-2-00351-4 KNT, Wash. Super. Ct. King County at Kent (Feb. 1, 2021) (Judge Ketu Shah). In addition, in *Young, Jr., v. Safelite Fulfillment, Inc.,* Judge James L. Robart granted final approval to a class of 120 Washington workers alleging unpaid break claims where the average individual class member recovery was $320.83. *See* Order Granting Plaintiff's Motion for Final Approval of Class Action Settlement, Case No. 2:19-cv-01027-JLR, Dkt. #33 (W.D. Wash. Dec. 3, 2020). *See also Perez-Hernandez v. Oasis Farms, Inc.*, Order and Final Judgment Granting Final Approval of Class Action Settlement and Attorneys' Fees and Costs, Case No. 17-2-00749-5, Wash. Super. Ct. Benton County (Jan. 12, 2018) (Judge Sam Swanberg)

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 3:22-cv-05484-BHS-JRC
- 17 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR STREET, STE. 205
TACOMA, WASHINGTON 98406
TEL: (253) 625-7720 / FAX: (310) 277-0635

(granting final approval to a class action settlement encompassing unpaid break claims where the average individual class member recovery was $176.37); *Garcia v. Frosty Ridge Orchards, LLC*, Order Granting Final Approval of Class Action Settlement and Attorneys' Fees and Costs and Judgment, Case No. 17-2-00224-39, Wash. Super. Ct. Yakima County (Jan. 19, 2018) (Judge Michael McCarthy) (granting final approval to a wage-and-hour class action settlement involving unpaid breaks where the average recovery was $263.90); and *Ayala v. Olsen Brothers Ranches, Inc.*, Case No. 17-2-01046-1, Wash. Super. Ct. Benton County (July 27, 2018) (unpaid break claim settlement with an average recovery of $215.46 per class member). CJA Decl., ¶ 28. The maximum Individual Settlement Award for Class Members who worked throughout the Settlement Period will be substantially higher than the average amount.

These results, consistent with those of the instant case, demonstrate that the Settlement obtained here is fair and reasonable, especially when considering the serious risks Plaintiff faced in the immediate case. The highest amount for a settlement award here will be substantially higher for those Class Members who worked throughout the Settlement Period. *Id.*

**2.   The Parties Sufficiently Investigated and Litigated this Matter to Allow Counsel and this Court to Conclude that the Settlement is Fair, Adequate, and Reasonable.**

The Parties engaged in an exchange of significant and substantive information relating to Class Members' unpaid wage claims, as detailed above, and were able to estimate class damages and assess the risks of further litigation. CJA Decl., ¶¶ 16-17. It was only after the Parties thoroughly investigated and evaluated the strengths and weakness of the case through arm's length settlement negotiations, including several days of direct settlement negotiations aided by a highly respected wage-and-hour mediator, Nancy Maisano, in December 2022. *Id.* ¶¶ 16, 27. This is sufficient to support the Settlement. *See Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 U.S. Dist. LEXIS 83192, at *17 (E.D. Cal. Sept. 11, 2008) ("approval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases").

///

///

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 3:22-cv-05484-BHS-JRC
- 18 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR STREET, STE. 205
TACOMA, WASHINGTON 98406
TEL: (253) 625-7720 / FAX: (310) 277-0635

**3.   The Settlement was the Product of Informed, Non-Collusive, and Arm's-Length Negotiations Between Experienced Counsel Whom Jointly Support the Settlement.**

Courts routinely presume a settlement is fair where it is reached through arm's-length bargaining, as it was here.  *See Hughes v. Microsoft Corp.,* No. C98-1646C, 2001 U.S. Dist. LEXIS 5976, at *20 (W.D. Wash. Mar. 26, 2001) ("A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.") (citation omitted). Here, the Settlement was a product of intensive, adversarial negotiations between the Parties represented by skilled and experienced counsel, which took place including several days of direct settlement negotiations aided by a highly respected wage-and-hour mediator, Nancy Maisano, in December 2022. CJA Decl., ¶¶ 2, 4-12, 16-17. Notably, prior to and during the settlement discussions, the Parties ensured both sides were fully informed about the strengths and weaknesses of their respective positions. *Id*. ¶¶ 16-17, 18-23. These factors support a finding that the Settlement is fair, adequate, and reasonable.

**4.   The Proposed Notice Plan is Reasonable.**

In order to protect the rights of absent class members, courts must provide the best notice practicable of a potential class action settlement. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). Procedural due process requires only notice reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). The Notice (Exhibit A to the Settlement Agreement) informs the Class Members about the terms of the Settlement, each Class Member's estimated Individual Settlement Payment, the procedure by which the Class Members may challenge the calculation, object to or opt out of the Settlement, and the date and location of the Final Approval Hearing. Accordingly, the Notice complies with the standards of reasonableness of a settlement notice disseminated under authority of the Court. In addition, the procedures surrounding the dissemination of the Notice ensure it will go out to Class Members in the manner best calculated to ensure that they are alerted to the terms of the Settlement and provided with the opportunity to respond to it. S.A., ¶¶ 5.4, 6.1-6.6.

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 3:22-cv-05484-BHS-JRC
- 19 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR STREET, STE. 205
TACOMA, WASHINGTON  98406
TEL: (253) 625-7720 / FAX: (310) 277-0635

## VI. THE REQUESTED ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE PAYMENT ARE FAIR AND REASONABLE.

In class actions, the court may award reasonable attorneys' fees and costs that are authorized by law or the parties' agreement. See FRCP 23(h). Here, Plaintiff's counsel is entitled to recover their attorneys' fees and costs for their wage claims under Washington law. *See* RCW 49.12.150 (employee who recovers for violations of minimum wage is entitled to "costs and attorney's fees to be fixed by the court"); RCW 49.46.090(1) (employee who recovers for violations of minimum wage is entitled to "costs and such reasonable attorney's fees as may be allowed by the court"); RCW 49.52.070 (employer who willfully withholds wages "shall be liable in a civil action . . . for twice the amount of wages unlawfully [withheld] . . . together with costs of suit and a reasonable sum for attorney's fees"). The fee award requested by Class Counsel is the product of an agreement reached through arm's-length bargaining by counsel experienced in similar litigation, and is therefore fair and reasonable. CJA Decl., ¶¶ 16-17. Further, Defendant does not oppose this request. S.A., ¶ 7.3.

Where counsel to a class action seek fees from the common fund, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prods. Liab.*, 654 F.3d 935, 942 (9th Cir. 2011) (citing *Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010)). Plaintiffs' counsel's request for fees is reasonable under either analysis.[9] Here, Plaintiff's counsel seek an award of 30% of the common fund for their attorneys' fees, a percentage well within the range of approved fee awards by Washington courts in similar cases. CJA Decl., ¶ 34. Moreover, it is not uncommon for courts to award attorneys' fees equal to 1/3 or more of the common fund in employment class actions like this one. *See e.g., Dennings v. Clearwire Corp.*, No. C10-1859JLR, 2013 U.S. Dist. LEXIS 64021 (W.D. Wash. May 3, 2013) (granting request for 35.78% fee); *Martin v. FedEx Ground Package System, Inc.*, 2008 WL 5478576, at *8 (N.D. Cal. Dec. 31, 2008) (federal district court approved attorneys' fees of 1/3 of common fund); *Stuart v. RadioShack Corp.*, No. C-07-4499 EMC, 2010 WL 3155645 (N.D. Cal.

---

[9] Prior to final approval, Plaintiff's counsel will file a separate motion for an award of attorneys' fees and costs, addressing in greater detail the facts and law supporting their fee request in light of all of the relevant facts.

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 3:22-cv-05484-BHS-JRC
- 20 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR STREET, STE. 205
TACOMA, WASHINGTON  98406
TEL: (253) 625-7720 / FAX: (310) 277-0635

Aug. 9, 2010) (approving fee award of 1/3 of the total maximum settlement and noting that the fee award of 1/3 of the total settlement was "well within the range of percentages which courts have upheld as reasonable in other class action lawsuits"); *Wilson v. Kiewit Pacific Co*., No. 09-cv-03630, ECF No. 119 (N.D. Cal. 2012) (approving fee award of 1/3 of the common fund and noting that such award is fair, reasonable and appropriate); *Romero v. Producers Dairy Foods, Inc.*, No. 1:05cv0484 DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (awarding fees of 1/3 of common fund in a wage and hour class action, noting: "[f]ee awards in class actions average around one-third of the recovery.").

Additionally, none of the *In re Bluetooth* "red flag" attorney collusion factors are present here. *See In re Bluetooth*, 654 F.3d at 947 (identifying three major signs of potential attorney collusion, including: "(1) when counsel receive a disproportionate distribution of the settlement . . . (2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds . . . and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. . . .") (internal quotations and citations omitted). Here, the 30% common fund fee award ($345,000) requested by Class Counsel is not disproportionate to the $748,250 Net Settlement Amount, it is not separate or apart from class funds, and the Parties did not arrange for fees not awarded to revert to Defendant rather than be added to the class fund.

Plaintiff's Counsel further request reimbursement of litigation costs up to $20,000. *Id.* ¶ 36. "Attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). Plaintiff's counsel has reasonably incurred costs while litigating this case, and will continue to incur additional costs throughout the settlement approval process. Plaintiff's counsel will file a separate motion for an award of attorneys' fees and costs prior to final approval.

### A.    The Class Representative Payment is Reasonable.

Here, the proposed Class Representative Payment of $10,000 to the named Plaintiff is fair in recognition of her substantial service to, and efforts on behalf of, the proposed Class. Shanahan Decl., ¶¶ 5-7. The $10,000 Class Representative Payment compares favorably with other class

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 3:22-cv-05484-BHS-JRC
- 21 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR STREET, STE. 205
TACOMA, WASHINGTON 98406
TEL: (253) 625-7720 / FAX: (310) 277-0635

representative service awards approved by courts in Washington and elsewhere. CJA Decl., ¶ 29. Defendant does not oppose this request. S.A., ¶ 7.4. Moreover, class representative payments are recognized as valid by the Ninth Circuit. *See Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 958 (9th Cir. 2009) ("Incentive awards are fairly typical in class action cases. Such awards are discretionary and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action. . . .") (internal citations omitted). The proposed Class Representative Payment of $10,000 for Plaintiff is therefore fair and reasonable, and should be preliminarily approved.

## VII.    THE COURT SHOULD APPOINT CPT GROUP, INC. AS SETTLEMENT ADMINISTRATOR

The Parties propose that the Court appoint CPT Group, Inc. to serve as the Settlement Administrator. CJA Decl., ¶ 37. CPT Group is experienced in administering class action settlements and pursuant to the Parties Settlement Agreement, CPT Group has provided a quote of under $26,750 to administer this Settlement. *Id.*

## VIII.    THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING.

The last step in the approval process is the formal hearing, whereby proponents of the Settlement may explain and describe its terms and conditions and offer argument in support of approval, and Class Members or their counsel may be heard in support of or in opposition to the Settlement. The Parties propose that the Court schedule a Final Approval Hearing of the Settlement, including Plaintiff's request for attorneys' fees, costs, and the Class Representative Payment, to occur approximately 150 days from the date preliminary approval is granted.

## IX.    CONCLUSION

For the foregoing reasons, Plaintiff respectively requests that the Court grant her motion for preliminary approval of his class action Settlement.

Respectfully submitted,

Date: March 2, 2023        By:    */s/Craig J. Ackermann*
ACKERMANN & TILAJEF, P.C.
Craig J. Ackerman, WSBA No. 53330
Brian Denlinger, WSBA No. 53177

2602 North Proctor St., #205
Tacoma, WA 98406
Telephone: (253) 507-4619
Facsimile: (310) 277-0635
cja@ackermanntilajef.com
bd@ackermanntilajef.com

Tatiana Hernandez, WSBA No. 54446
LAW OFFICE OF TATIANA HERNANDEZ, P.C.
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035
Telephone: (213) 909-4248
Facsimile: (310) 388-0639
Email: tatiana@thlawpc.com

*Attorneys for Plaintiff and the Class*

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 3:22-cv-05484-BHS-JRC
- 23 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR STREET, STE. 205
TACOMA, WASHINGTON  98406
TEL: (253) 625-7720 / FAX: (310) 277-0635

1

**<u>CERTIFICATE OF SERVICE</u>**

2

I, Jaclyn Blackwell, hereby certify and declare under penalty of perjury under the laws of

3

the State of Washington that, on <u>March 2, 2023</u> I caused to be electronically filed the foregoing

4

Motion, along with the accompanying Declarations of Craig Ackermann and Tanya Shanahan and

5

the Proposed Order, with the Clerk of the Court using the CM/ECF system that will send

6

notification of such filing to the following:

7

8

9

10

11

Tatiana Hernandez, WSBA #54446
LAW OFFICE OF TATIANA
HERNANDEZ, P.C.
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035
Telephone: (213) 909-4248
Facsimile: (310) 388-0639
Email: tatiana@thlawpc.com

Craig J. Ackermann, WSBA #53330
Brian Denlinger, WSBA #53177
ACKERMANN & TILAJEF, P.C.
1180 South Beverly Drive, Suite 610
Los Angeles, CA 90035
Tel: (310) 277-0614
cja@ackermanntilajef.com
bd@ackermanntilajef.com

12

13

14

15

16

Nicholas A. Gillard-Byers, WSBA #45707
SEYFARTH SHAW LLP
999 Third Avenue
Seattle, WA 98104
Phone:  (206) 946-4910
Email: ngillard-byers@seyfarth.com

Brett C. Bartlett (admitted pro hac vice)
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E., Suite 2500
Atlanta, GA 30309
Phone: (312) 460-5000
Email:  bbartlett@seyfarth.com

17

18

19

20

Alex W. Simon (admitted pro hac vice)
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E., Suite 2500
Atlanta, GA 30309
Phone: (415) 397-2823
Email:  asimon@seyfarth.com

21

I further certify that I mailed a true and correct copy of the foregoing to the following non-

22

CM/ECF participant: N/A

23

24

  _/s/Jaclyn Blackwell_____

25

Jaclyn Blackwell
Office Manager
ACKERMANN & TILAJEF, P.C.

26

27

28

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 3:22-cv-05484-BHS-JRC
- 24 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR STREET, STE. 205
TACOMA, WASHINGTON  98406
TEL: (253) 625-7720 / FAX: (310) 277-0635